
**FILED**

**NOT FOR PUBLICATION**

JAN 05 2007

UNITED STATES COURT OF APPEALS

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>V.<br><br>THOMAS STEPHEN LEONG,<br><br>Defendant - Appellant. | No. 05-10377<br><br>D.C. No. CR-03-00201-ACK<br><br>MEMORANDUM* |
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellant,<br><br>V.<br><br>THOMAS STEPHEN LEONG,<br><br>Defendant - Appellee. | No. 05-10465<br><br>D.C. No. CR-03-00201-ACK |

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Submitted on briefs November 14, 2006[**]
Honolulu, Hawaii

Before: TROTT, WARDLAW, and W. FLETCHER, Circuit Judges.

Leong was convicted in the district court of (1) conspiracy to distribute methamphetamine, (2) attempt to distribute methamphetamine, and (3) possession with intent to distribute 50 grams or more of methamphetamine. He appeals, assigning three errors to the district court. First, he argues the district court erred when it admitted audio-taped conversations between Leong and a cooperating witness, Michael Alvarez, in violation of Leong's Sixth Amendment right to confront adverse witnesses, because the prosecution did not call Alvarez as a witness and make him available for cross-examination. Second, he claims the district court erroneously denied Leong's motion to disqualify Assistant U.S. Attorney (AUSA) Sorenson as a witness. Leong argues Sorenson's testimony constituted improper vouching and violated the advocate-witness rule. Third, Leong argues the district court improperly allowed the prosecution, during closing arguments, to vouch for evidence. We affirm the district court's ruling on each of these issues.

---

[**] This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

The United States cross-appeals, challenging Leong's sentence. It argues the district court made a clearly erroneous finding of fact when it concluded the government engaged in sentence factor manipulation and on that basis granted Leong's request for a downward departure. This error, the government argues, makes Leong's sentence objectively unreasonable. We disagree with the government and affirm Leong's sentence.

Leong's first argument fails because Alvarez's recorded statements are not hearsay. In Crawford v. Washington, the Supreme Court emphasized that the Confrontation Clause applies only to testimonial hearsay, and not to non-hearsay evidence. 541 U.S. 36, 59 n.9 (2004). Alvarez's recorded statements were offered for the sole purpose of facilitating the jury's understanding of comments Leong made during his conversation with Alvarez. This is a permissible non-hearsay use of Alvarez's recorded statements. See United States v. Kenny, 645 F.2d 1323, 1339-40 (9th Cir. 1981). The district court concluded correctly they were not hearsay and were therefore admissible without the prosecution calling Alvarez as a witness.

Leong's second claim is also without merit. A prosecutor improperly vouches for a witness where the prosecutor impresses on the jury the prosecutor's own belief in the witness's credibility. See United States v. Edwards, 154 F.3d

915, 921 (9th Cir. 1998). The advocate-witness rule imposes a related prohibition -- a prosecutor may not take the stand at a trial he or she is litigating. Id. Leong argues that AUSAs Shipley and Sorenson were somehow connected, during the investigation and prosecution of Leong, such that Sorenson's testimony corroborating Leong's unrecorded admission to Officer Cho was "legally and factually" Shipley's. Thus, Leong claims, Shipley violated the advocate-witness rule when he put Sorenson on the stand, and then, with Sorenson as his proxy, improperly "vouched" for Officer Cho's and Special Agent Brown's corroboration of Leong's unrecorded admission to Cho.

The advocate-witness rule, however, does not prevent a government attorney who participates in an investigation that leads to criminal charges against a defendant -- but does not participate in the defendant's trial -- from taking the stand. The rule prohibits a prosecutor from taking the stand in a case he or she is litigating. United States v. Prantil, 764 F.2d 548, 552-53 (9th Cir. 1985). This did not happen at Leong's trial. Cho, Brown, and Sorenson testified as witnesses for the prosecution. None of these men participated in litigating the government's case. Leong does not claim they did. He merely asserts there is some connection between Sorenson and Shipley such that when Sorenson took the stand, Shipley was actually testifying. This is not, under any reasonable reading of the law, a

violation of the advocate-witness rule or improper vouching; therefore, the district court did not abuse its discretion when it denied Leong's motion to disqualify Sorenson as a witness.

Leong's third claim lacks merit as well. Leong's counsel did not make any objections during Shipley's initial closing argument. When Shipley concluded his remarks, counsel asked the court to "strike the remarks Mr. Shipley made vouching for the prosecution's witnesses." He did not, however, identify the remarks, nor did he in his brief to this court. No improper vouching appears in the transcript of Shipley's initial closing argument. During Shipley's final closing argument, counsel made one vouching objection while Shipley was explaining to the jury the government's burden of proof. The district court did not abuse its discretion when it overruled the objection.

The government's argument on cross-appeal fails because the district court's factual findings were not clearly erroneous. The district court made express factual findings that: (1) there was a preponderance of the evidence to establish that Leong was predisposed to distributing approximately 2.5 grams of methamphetamine before the sting transaction; (2) the government induced Leong into committing the greater offense of distributing in excess of 50 grams, thereby subjecting him to greater punishment; (3) Alvarez orchestrated the transaction for

the greater amount of drugs according to Cho's instruction; (4) the government used a ten-year mandatory minimum term to intimidate the defendant into cooperating; (5) the government engaged in misconduct when it orchestrated the sale of substantially more methamphetamine than the defendant was predisposed to be involved with; and (6) since the time the prison intercepted the 2.5 gram package from Leong to Alvarez they were aware of Alvarez's involvement in the drug importation scheme.

The government asserts it had no knowledge of Alvarez's connection to the Priority Mail envelope, delivered to Alvarez's cell mate in January 2003, until June of 2003, and therefore had no idea that Leong's participation in the drug importation scheme involved small quantities of methamphetamine. This is a dubious assertion, considering that Leong and Alvarez's phone conversation pertaining to the April sting transaction included references to a Priority Mail envelope, and that during the transaction Leong had "Frank," a law enforcement official, place the drugs into a Priority Mail envelope. In its briefs, the government never addresses how it procured Alvarez as a cooperating witness and used him to orchestrate the April sting, given its complete unawareness, until June of 2003, of Alvarez's connection to the January Priority Mail envelope. Nor does

it offer the date Soliven's fingerprint was discovered, which would help evaluate the government's assertions.

Leong's Presentence Report (PR) sheds some light on the issue. It states that after intercepting the January envelope, Halawa Correctional Facility (HCF) identified inmate suspects who tested positive for methamphetamine in urinalyses HCF conducted. In March of 2003, after HCF identified him as a suspect in the HCF drug importation scheme, Alvarez implicated both Leong and Soliven. The PR states also that Alvarez told law enforcement Leong used confidential legal mail to smuggle drugs into HCF, and on one occasion sent a package to Alvarez's cell mate, Allen Yeager, the addressee of the January envelope. The government filed objections to the PR, but the objections did not include any challenges to these facts.

The district court made express factual findings to support the downward departure. Those factual findings were based on evidence in the record and in the PR. The district court's account of the evidence is plausible in light of the record viewed in its entirety; therefore, it did not rely on a clearly erroneous finding of fact when it concluded the government engaged in sentence factor manipulation.

**AFFIRMED.**

7

A TRUE COPY
CATHY A. CATTERSON
CLERK OF COURT
ATTEST

MAR 27 2007

by:
Deputy Clerk